**WO**                           **NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| **CHRISTINE MORRIS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIV 04-1315 PHX MEA** |
| | ) | |
| **BROADWING COMMUNICATIONS LLC,** | ) | **ORDER** |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

All of the parties have consented to the exercise of magistrate judge jurisdiction over this case, including the entry of final judgment. Before the Court is Defendant's motion for summary judgment (Docket No. 31) and Defendant's motion (Docket No. 50) to strike portions of Plaintiff's statement of facts in opposition to Defendant's motion for summary judgment. The Court heard oral argument from counsel for the parties regarding all pending motions on January 31, 2006.

### I. Procedural Background

Plaintiff's complaint, filed June 24, 2004, alleged Defendant violated Title VII of the Civil Rights Act of 1964 by taking an adverse employment action against Plaintiff in retaliation for engaging in a protected act. Defendant answered the complaint and a scheduling order was issued February 28, 2005. The parties engaged in discovery, including the

deposition of Plaintiff. Plaintiff did not notice any depositions. Defendant filed a motion for summary judgment on October 7, 2005, and a separate statement of facts in support of the motion for summary judgment. On November 3, 2005, Plaintiff filed a motion to stay Defendant's motion for summary judgment and a motion to compel discovery. Plaintiff filed a response to the motion for summary judgment on November 10, 2005. Plaintiff adopted Defendant's statement of facts, except for one paragraph, and also filed a statement of facts in support of her response to the motion for summary judgment. See Docket No. 36. On December 27, 2005, Defendant filed a reply to Plaintiff's response to the motion for summary judgment.

Subsequent to hearing oral argument on Plaintiff's motion to stay summary judgment and Plaintiff's motion to compel, the Court granted these motions and ordered Defendant to provide the requested evidence or a sworn statement that the evidence did not exist. Defendant having complied with the Court's order subsequent to oral argument, i.e., having provided the requested evidence, and Plaintiff and Defendant having submitted additional briefing regarding the impact of the new evidence on the propriety of granting or denying the motion for summary judgment, the pleading regarding the motion for summary judgment is now complete.

**II. Defendant's motion to strike**

Defendant contends that portions of Plaintiff's statement of facts in response to Defendant's motion for summary judgment should be stricken, pursuant to Rule 56(c)(1), Federal Rules of Civil Procedure, because these statements contain or

-2-

constitute inadmissible evidence which should not be considered when determining whether Defendant is entitled to judgment as a matter of law.  Defendant argues that the challenged statements of facts should be stricken as conclusory, unsupported, hearsay, and not based on the personal knowledge of the affiants on whose statements the challenged portions of the statement of facts are predicated.

Striking evidence submitted in opposition to a motion for summary judgment is a decision within the Court's discretion.  See City of Long Beach v. Standard Oil Co., 46 F.3d 929, 936-37 (9th Cir. 1995); Barthelemy v. Air Lines Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990).  When considering a motion for summary judgment, however, the Court must focus on the admissibility of the contents of the evidence, rather than the admissibility of the form of the evidence.  See Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003), cert. denied, 541 U.S. 937 (2004).

Statements contained in an affidavit in opposition to a motion for summary judgment, which are based on information and belief rather than the affiant's personal knowledge, do not raise triable issues of fact and may be stricken from the record.  See Columbia Pictures Indus., Inc. v. Professional Real Estate Inv., Inc., 944 F.2d 1525, 1529 (9th Cir. 1991).  Statements which are legal conclusions or speculative assertions, and statements of hearsay evidence, do not satisfy the standards of personal knowledge, admissibility, and competence required by Rule 56(e).  See, e.g., Vazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998); Jones v.

Merchants Nat'l Bank & Trust Co., 42 F.3d 1054, 1059 (7th Cir. 1994) (stating that conclusory allegations of the complaint may not be supplanted with conclusory allegations of an affidavit to defeat a motion for summary judgment). However, an affiant's statement that the facts asserted are based on the affiant's personal knowledge is sufficient to satisfy the "personal knowledge" requirement of Rule 56(e). See Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc., 84 F.3d 1186, 1193 (9th Cir. 1996).

With regard to the challenged statements in Plaintiff's statement of facts which the Court cites in reaching its decision, the affiants have asserted that these facts are based on their personal knowledge and, therefore, the Court will not require Plaintiff to provide additional evidence regarding the facts for purposes of resolving Defendant's motion for summary judgment. See Phelan v. City of Chicago, 226 F. Supp. 2d 914, 920 (N.D. Ill. 2002), aff'd 347 F.3d 679 (7th Cir. 2003), cert. denied, 541 U.S. 989 (2004). The Court will not exercise its discretion to strike the challenged portions of Plaintiff's statement of facts in opposition to Defendant's motion for summary judgment. See Jones v. Barnhart, 349 F.3d 1260, 1270 (10th Cir. 2003)(affirming denial of motion to strike because "the district court instead relied on the declarations to the extent that they contained relevant and admissible material, ignoring inadmissible and irrelevant statements" because there was "nothing in the record that suggests an abuse of discretion by the district court, or that it failed to ignore inadmissible hearsay or legal conclusions within the

declarations as submitted to it.").

### III.   Standard for granting summary judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file show that there is no genuine dispute regarding the material facts of the case and the moving party is entitled to a judgment as a matter of law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986).

> For purposes of deciding a motion for summary judgment, "genuine" means that the evidence about the fact is such that a reasonable jury could resolve the point in favor of the non-moving party, and "material" means that the fact is one that might affect the outcome of the suit under the governing law.

United States v. One Parcel of Real Prop. with Bldgs., 960 F.2d 200, 204 (1st Cir. 1992). See also Guidroz-Brault v. Missouri Pac. R.R. Co., 254 F.3d 825, 829 (9th Cir. 2001).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading,

but ... must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.   The United States Supreme Court has stated that when a party moving for summary judgment has carried its burden under Rule 56(c), "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586, 587, 106 S. Ct. 1348, 1356 (1986) ("[I]f the factual context renders respondents' claim implausible ... respondents must come forward with more persuasive evidence to support their claim than would otherwise be necessary.").   The party opposing the motion must produce some significant, probative evidence tending to contradict the moving party's allegations, thereby creating a genuine question of fact for resolution at trial.   Anderson, 477 U.S. at 248, 256-57; 106 S. Ct. at 2510, 2513-14 (holding that the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

The Court must consider Defendant's motion for summary judgment construing all alleged facts with all reasonable inferences favoring Plaintiff.   See, e.g., Genzler v. Longanbach, 410 F.3d 630, 636 (9th Cir.), cert. denied, 126 S. Ct. 749 (2005).

### IV. Statement of facts

Plaintiff has adopted Defendant's statement of facts, except for paragraph 61 of the statement of facts.

Plaintiff was hired by IXE Eclipse, a communications equipment company, in June 1998 as a district sales manager located in Phoenix.   Docket No. 32 (Defendant's statement of

facts in support of the motion for summary judgment) ("DSOF"), para. 1 & Attach. A (Plaintiff's deposition testimony) at 34. Plaintiff's job included forecasting her team's monthly sales for her regional director. Id., para. 2 & Attach. A at 48.  In the process of forecasting her team's monthly sales, Plaintiff would get a "general feel" of accounts she believed would close and gave a weighted forecast to her supervisor. Id., para. 3 & Attach. A at 48.  In 1999, IXE Eclipse was purchased by Cincinnati Bell and the name of the company was changed to Broadwing Communication Services, Inc. Id., para. 4. After the change in ownership, Plaintiff's job title became "branch manager," however, her job duties were not changed. Id., para. 5.

In late 1999, Ken Smith became Plaintiff's supervisor, i.e., her regional director, at Broadwing. Id., para. 6. Mr. Smith worked at the company's Salt Lake City office. Id., para. 7. Plaintiff had weekly telephone conversations with Mr. Smith and Mr. Smith visited the Phoenix office on a monthly basis. Id., para. 8. Mr. Smith did not allow or require Plaintiff to revise her monthly sales forecast figures if she thought she would not be able to meet her forecasts. Id., Attach. A at 177. Plaintiff received several commendations and awards from the company for her performance as an employee while Mr. Smith was her supervisor. Docket No. 36 (Plaintiff's Statement of Facts in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment) ("PSOF"), Attach. (Plaintiff's affidavit) at para. 9. Prior to March of 2003, Plaintiff was viewed as a competent, hard-working employee and supervisor, whose team

received company awards for job performance.  DSOF, paras. 4, 9, 20; PSOF, Attach. at para. 2.

Plaintiff states in her affidavit that, in January of 2002, she received complaints from several female Broadwing employees that they had been victims of sexual harassment by Mr. Smith, i.e., the employees complained of "events of inappropriate sexual behavior."  PSOF, para. 3 & para. 10 & Attach. at para. 10.  In January of 2003 Plaintiff approached Mr. Smith regarding the employees' complaints about his workplace behavior.  DSOF, Attach. A at 125.[1]  On March 14, 2003, Plaintiff reported the complaints about Mr. Smith's behavior to Broadwing's Vice President of Human Resources, Ms. Figeley, and the corporation's Human Resources Manager.  Id., para. 10. Plaintiff testified that, prior to reporting complaints about Mr. Smith to the corporate Human Resources division, she notified Gary Graham that she would be making the report.  Id., Attach. A at 85, 92-93, 131-32.

After Plaintiff reported the complaints about Mr. Smith to the corporate office, Ms. Figeley, who was located in the company's Austin, Texas, office, conducted an investigation regarding the complaints, including interviewing 33 employees in

---

[1] Attachment B to Defendant's statement of facts is the investigative summary, which states:

> [In March of 2003]... [t]he manager indicated that the issues she was about to report had gone on for a long time, from approximately 2000-current.  She indicated that one reason she had chosen to come forward at this time was her concern about the potential damage caused to her professional reputation by a recent posting on the Yahoo message board, alleging "sexual harassment by a BSM (Branch Sales Manager) in the Phoenix office".

Phoenix, California, Colorado, and Utah.   DSOF, para. 12 & Attach. B.  Ms. Figeley produced a report describing the results of the investigation.   Id., para. 13 & Attach. B.   The report did not mention Plaintiff by name and was distributed to a "small group" of Broadwing management employees.   Id., para. 14 & Attach. A at 96.   The report was distributed to, inter alia, Rick Calder, the president of sales for the company, and Gary Graham, a regional director and Mr. Smith's supervisor.   Id., Attach. A at 97 & Attach. B.

As a result of the investigation, Mr. Smith was terminated on April 25, 2003.  DSOF, para. 16.  After Mr. Smith was terminated, Plaintiff temporarily reported to Gary Graham. Id., para. 18.   Plaintiff alleges Mr. Graham was a "close friend" of Mr. Smith's.  PSOF, para. 9.  Mr. Graham had been Mr. Smith's supervisor.  DSOF, Attach. A at 85; PSOF, para. 12.   In May of 2003, Mr. Graham stated to Plaintiff: "Well it looks like we won't be having fun anymore, someone always has to screw things up for everyone else."  PSOF, Attach. at para. 17.   Mr. Graham also stated that he "did not see anything wrong with two consenting adults having a relationship." Id., Attach. at para. 17.

In June of 2003, Broadwing Communications Services, Inc., was purchased by another company and the name of the company was changed to Broadwing Communications, L.L.C.  DSOF, para. 19.  After the change in ownership, on June 26, 2003, the company restructured its sales department, i.e., the Large Accounts Division was merged with the National Accounts Division.   Id., para. 21; PSOF, Attach. at para. 18.   After the

restructuring, Plaintiff, who had previously worked in the Large
Accounts Division, now worked in the National Accounts Division,
and Plaintiff was made a "National Account Marketing Manager."
DSOF, para. 22.   Plaintiff became responsible for national
accounts, in addition to her previous job responsibilities as
branch manager of the Phoenix office.   Id., para. 23.

Also as a result of the company's re-organization, Mr.
Putt was appointed president of sales for the company, replacing
Mr. Calder.   DSOF, Attach. A at 120; PSOF, para. 9.   Plaintiff
alleges Mr. Putt was "a close friend" of Mr. Smith's.   PSOF,
para. 9.   Plaintiff believes Mr. Putt told Mr. Guidrey of her
involvement in the investigation of Mr. Smith.   DSOF, Attach. A
at 120, 124-25, 132.

Mr. Graham was Plaintiff's supervisor from April 25,
2003, when Mr. Smith was terminated, until approximately the end
of June of 2003.   Id., Attach. A at 60; PSOF, Attach. at para.
7.   In June of 2003, Mr. Guidrey replaced Mr. Graham as
Plaintiff's supervisor.   DSOF, para. 24.   Mr. Guidrey had
previously managed the company's National Accounts Division,
from the company's Texas office, since December of 2002.   Id.,
para. 24.   In his new position as Western Region Vice President
for Sales, Mr. Guidrey occupied an office in the company's
Walnut Creek, California, headquarters, adjacent to Mr. Graham's
office.   PSOF, para. 9; DSOF, Attach. A at 119-20.   Prior to
June of 2003, Mr. Guidrey had met Plaintiff on two occasions and
Mr. Guidrey was pleasant to Plaintiff.   PSOF, Attach. at para.
22.   Plaintiff states she believes Mr. Graham told Mr. Guidrey
of her involvement in the investigation of Mr. Smith.   DSOF,

Attach. A at 131-32.

Mr. Guidrey has stated he was unfamiliar with Plaintiff's job performance prior to becoming her supervisor. Id., para. 26 & Attach. D.  Plaintiff states Mr. Guidrey told her that Mr. Graham "had briefed him on each Branch and Branch Manager" in anticipation of Mr. Guidrey assuming their supervision.  PSOF, Attach. at para. 23.

In early July of 2003, approximately one month after Mr. Guidrey became her supervisor, Plaintiff tried to discuss her involvement in the investigation of Mr. Smith's harassing behavior with Mr. Guidrey in a telephone call.  Id., para. 11; Attach. at para. 23.  Plaintiff avers Mr. Guidrey refused to discuss the circumstances of Mr. Smith's termination with Plaintiff.  Id., para. 11.  Plaintiff alleges Mr. Guidrey "cut [her] off" in an exasperated and angry tone of voice when she tried to discuss Mr. Smith's termination with Mr. Guidrey, telling her he had "no desire to hear about the situation." Id., Attach. at para. 24.

Mr. Guidrey had regular telephonic meetings with his branch managers, including Plaintiff.  DSOF, para. 27.  During weekly sales meetings, the sales managers provided their supervisors with monthly sales forecasts for their teams.  The sales managers updated their forecasts as the month progressed. Id., para. 29.

Plaintiff's original sales forecast for her team for the month of July 2003, was $50,000.  Id., para. 30.  Early in July of 2003, Plaintiff revised her forecast to $43,000 because two national accounts were not going to close as previously

expected.  _Id._, para. 31.  On July 28, 2003, Plaintiff made a "firm commitment" to achieving the forecast sales figure of $43,000.  _Id._, para. 32.  After making this statement but before the end of the month, Plaintiff told Mr. Guidrey she could not make the forecasted sales.  _Id._, para. 33.  Plaintiff's team's sales for July of 2003 were $13,227, i.e., seventy percent below the forecasted sales figure.  _Id._, para. 34.

On August 1, 2003, Mr. Guidrey sent Plaintiff an email stating that her forecasting abilities were a job performance problem and that he expected better performance in this regard in the current month.  _Id._, para. 36.  Plaintiff responded that she understood and that the problem would not recur.  _Id._, para. 37.  Plaintiff's team did not make their August 2003 forecasted sales figure.  _Id._, para. 38.  Plaintiff's team reported negative sales for the month of August 2003.  _Id._, Attach. A at 187.

On September 5, 2003, Mr. Guidrey met with Plaintiff in Phoenix.  _Id._, para. 40 & Attach. A at 193.  Mr. Guidrey told Plaintiff that, due to her poor performance in forecasting sales, she was to be demoted to a non-management sales position within the company.  _Id._, para. 41.  However, the job to which Plaintiff was to be demoted also required forecasting sales. PSOF, Attach. at para. 37.

Plaintiff "refused" the demotion because, she asserts, others had missed their sales forecasts and were not terminated, including Mr. Guidrey who had missed his forecasts for a six month period.  DSOF, Attach. A at 183; PSOF, para. 20 ("Plaintiff was offered a demotion by Defendant, but declined

this as a result of the punitive harassment she was being subjected to by her superiors which created an intolerable work environment for her.")   Mr. Guidrey offered Plaintiff a severance package as an alternative to the demotion.   DSOF, para. 42.   Plaintiff refused the severance package and terminated her employment as of September 5, 2003.  Id., para. 43.

There is an affidavit from Mr. Guidrey attached to Defendant's statement of facts in support of their motion for summary judgment averring he was unfamiliar with the sexual harassment investigation in its entirety and that he considered Plaintiff to have a "clean slate" when he became her supervisor after the company restructured.

Mr. Guidrey states:

> I was not familiar with Ms. Morris until June 2003.   Further, I was not familiar with her involvement in an investigation of sexual harassment that I now know occurred in March and April of 2003.   Because that investigation did not occur within the sales division in which I worked, I had no involvement in the decisions resulting from the investigation, and I was not aware of the details regarding the termination of Ms. Morris' former Regional Director [Mr. Smith].

DSOF, Attach. D.

Plaintiff asserts the following in her statement of facts in response to Defendant's motion for summary judgment:

Prior to the June 2003 purchase and reorganization of the company, if a particular branch of the sales division was not going to meet its sales projections, Plaintiff would be asked to produce revenue in excess of her "original forecast and transfer the excess sales to the branch that was below their

forecast." PSOF, Attach. at para. 7. Because Plaintiff's sales team consistently performed well, she often transferred her team's sales to branches with shortages. Id., Attach. at para. 7.

As a result of the restructuring of the company and Mr. Guidrey's promotion, Plaintiff received responsibility for two accounts previously assigned to another branch manager who reported these accounts to Mr. Guidrey. PSOF, Attach. at para. 30. In July of 2003, Plaintiff was called upon to forecast sales for these two accounts. Id., para. 16. Plaintiff consulted Mr. Guidrey about these accounts and he informed Plaintiff that he was comfortable with the projections of the prior account manager. Id., para. 16. These accounts comprised fifty percent of the sales or accounts projected by Plaintiff for July of 2003. DSOF, Attach. A at 179. The accounts did not close in July of 2003 but did close later. Id., Attach. A at 178-184. When Plaintiff informed Mr. Guidrey that the accounts would not close in July, he cursed at Plaintiff. Id., Attach. A at 156.

Another branch manager employed by Defendant, Ms. Meola, missed her sales forecasts for a period of six months and she was not demoted or fired. PSOF, Attach. at para. 34. Another branch manager, Mr. McGinty, missed his sales forecasts for a period of five months, was not demoted or fired, and received a promotion. Id., Attach. (Affidavit of Mr. McGinty) at para. 10.

Defendant had a "Performance Improvement Plan" in place to assist employees with deficient job performance. Id.,

Attach. at para. 36.  The company's policy was to provide an opportunity for deficient employees to participate in an improvement plan prior to disciplining the employee.  Id., Attach. at para. 36.  Defendant does not dispute Plaintiff was not offered the opportunity to participate in an improvement plan prior to being demoted.

As a result of the additional discovery provided after oral argument, Plaintiff presents evidence that Mr. Calder, Broadwing's President of Business Markets prior to June of 2003, and Mr. Putt's predecessor, and Mr. Graham, the Vice President in Charge of Sales for the Western Region, Mr. Smith's supervisor, and Mr. Smith knew that Plaintiff had instigated the investigation resulting in Mr. Smith's termination.  See Docket No. 63.

## V.  Statement of relevant law

A Title VII retaliation claim is decided using the McDonnell-Douglas burden-shifting methodology.  The burden is initially on the plaintiff to establish a prima facie case of retaliation.  The plaintiff must establish that she engaged in activity protected by Title VII, that she was subjected to an adverse employment action, and that there was a causal link between the protected activity and the adverse employment action.  See, e.g., Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000); EEOC v. Dinuba Med. Clinic, 222 F.3d 580, 586 (9th Cir. 2000).  Only the third factor of the relevant test is disputed by the parties to this matter.

A causal link may be established by direct or circumstantial evidence.  The Ninth Circuit has held that a

causal link between protected activity and an adverse employment action "may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987), quoted in Casumpang v. International Longshoremen's & Warehousemen's Union, Local 142, 269 F.3d 1042, 1059 (9th Cir. 2001).

To establish a causal link in a Title VII retaliation claim, an employee must establish that the employer was aware of the employee's protected action.  "Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity." Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982).  See also Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003); Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004) ("[A]n employer cannot retaliate when it is unaware of any complaints" of illegal employment practices); Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993) ("At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action."); Holbrook v. Reno, 196 F.3d 255, 263 (D.C. Cir. 1999).

If the plaintiff establishes her prima facie case of retaliation, then the defendant must present evidence of a legitimate, non-retaliatory reason for their adverse action.  To satisfy this burden, the defendant "need only produce admissible evidence which would allow the trier of fact rationally to

-16-

conclude that the employment decision had not been motivated by discriminatory animus." <u>Texas Dep't of Comm. Affairs v. Burdine</u>, 450 U.S. 248, 257, 101 S. Ct. 1089, 1096 (1981); <u>Miller v. Fairchild Indus., Inc.</u>, 797 F.2d 727, 731 (9th Cir. 1986).

If the defendant proffers a non-retaliatory reason for the adverse action, then the burden shifts back to the plaintiff to show that the proffered reason is a pretext.

> A plaintiff may not defeat a defendant's motion for summary judgment merely by denying the credibility of the defendant's proffered reason for the challenged employment action. [] Nor may a plaintiff create a genuine issue of material fact by relying solely on the plaintiff's subjective belief that the challenged employment action was unnecessary or unwarranted. []

<u>Cornwell v. Electra Cent. Credit Union</u>, 439 F.3d 1018, 1029 n.6. (9th Cir. 2006) (stating that summary judgment is not appropriate if a reasonable jury could conclude based on a preponderance of the evidence that the defendant took the challenged action for an unlawful motive).

> To establish that a defendant's nondiscriminatory explanation is a pretext for discrimination, plaintiffs may rely on circumstantial evidence, which we previously have said must be "specific" and "substantial" to create a genuine issue of material fact ... we have equated "specific, substantial" evidence with evidence sufficient to raise a genuine issue of material fact under Rule 56(c).

<u>Id.</u> at 1029.

**VI. Analysis**

Plaintiff alleges she was punished for reporting the harassment because, approximately four months after the investigation was completed, she was told she was to be demoted.

Defendant contends that the demotion was related to Plaintiff's unsatisfactory performance in her new position and that the relevant decision-maker, Mr. Guidrey, did not know that Plaintiff had instigated, or was involved in, the sexual harassment investigation.   Defendant seeks summary judgment based on the assertion that Plaintiff has not produced admissible evidence of Mr. Guidrey's knowledge of Plaintiff's protected activity and, therefore, that Plaintiff has failed to establish her prima facie case of retaliation.   Defendant also contends summary judgment is appropriate because Plaintiff presents insufficient evidence to create a disputed issue of material fact with regard to Defendant's proffered non-discriminatory reason for taking an adverse employment action against Plaintiff.

### 1.   Prima facie case of retaliation

The requisite degree of proof necessary to establish a prima facie case for Title VII claims on summary judgment is minimal, i.e., less than a preponderance of the evidence.   See Chuang v. University of Cal., Davis, Bd. of Trs., 225 F.3d 1115, 1124 (9th Cir. 2000); Wallis v. J.R. Simplot Co., 26 F.3d 885, 889 (9th Cir. 1994).   To survive summary judgment, the plaintiff need only offer evidence giving rise to an inference of an unlawful motivation for the adverse employment action.   See Raad, 323 F.3d at 1196.

A causal link supporting a prima facie case of retaliation may be inferred from evidence showing the adverse action occurred shortly after the employee filed her EEOC charge.   See Ray v. Henderson, 217 F.3d 1234, 1244 (9th Cir.

-18-

2000); <u>Miller v. Fairchild Indus., Inc.</u>, 885 F.2d 498, 505 (9th Cir. 1989).  A causal link may also be inferred from evidence showing that the employer treated the plaintiff differently from other employees, or that the employer's treatment of the plaintiff changed after the employer learned of their protected activity.  <u>See</u> <u>Raad</u>, 323 F.3d at 1197; <u>Miller</u>, 885 F.2d at 505-06; <u>Breneman v. Kennecott Corp.</u>, 799 F.2d 470, 475 (9th Cir. 1986); <u>Cohen</u>, 686 F.2d at 797.  Additionally, "circumstantial evidence of a pattern of antagonism following the protected conduct can also give rise to the inference."  <u>Kachmar v. SunGard Data Sys., Inc.</u>, 109 F.3d 173, 177 (3d Cir. 1997) (internal quotations omitted).  <u>See</u> <u>also</u> <u>Porter v. California Dep't of Corr.</u>, 419 F.3d 885, 895 (9th Cir. 2004).  When reaching a decision regarding a motion for summary judgment in the context of a Title VII retaliation claim, the Court must examine the totality of the circumstances, and not just the timing of the protected act and the adverse action, to determine if an inference of causation is possible.  <u>See</u> <u>Coszalter v. City of Salem</u>, 320 F.3d 968, 978 (9th Cir. 2003).

Viewing all of the evidence in the light most favorable to Plaintiff and resolving all reasonable inferences in her favor, the Court concludes that Plaintiff has raised a material issue of fact with regard to her prima facie case of retaliation.  For the purposes of withstanding a motion for summary judgment, Plaintiff has carried her burden of presenting evidence establishing a prima facie case of unlawful retaliation by creating a genuine issue of material fact as to Defendant's motive for taking an adverse employment action against

Plaintiff.   Although the Court rejects Plaintiff's contention that, as a matter of law, one corporate officer's knowledge of activity may be imputed to other corporate officers, including the specific individual officer taking the adverse action, Plaintiff has presented circumstantial evidence that the individual taking the adverse action did have knowledge of her protected activity.

Plaintiff need not prove by a preponderance of the evidence, at the summary judgment stage, that Mr. Guidrey was aware of her involvement in the investigation of Mr. Smith; "she must only produce evidence that would *support an inference*" that Mr. Guidrey "was so aware." Dey v. Colt, 28 F.3d 1446, 1458, (7th Cir. 1994) (emphasis added).  Plaintiff has presented some evidence that would support an inference that Mr. Guidrey "was so aware."  Mr. Graham was aware that Plaintiff initiated the investigation which led to Mr. Smith's termination and a logical inference to be drawn from the circumstantial evidence, i.e., that Mr. Graham and Mr. Guidrey shared information regarding the branch managers Mr. Guidrey was to supervise, is that Mr. Graham communicated Plaintiff's involvement in the investigation to Mr. Guidrey.   Plaintiff presents evidence that the fact that Plaintiff was the instigator of the investigation into Mr. Smith's behavior was not a secret within the company, in part because both Mr. Smith and Plaintiff made others, including Mr. Graham, aware of Plaintiff's involvement.[2]   Plaintiff has

---

[2] Although the Court does not rely on the affiants' statements that "everybody" at the company knew of Plaintiff's involvement as not being made upon personal knowledge or conclusory, the Court notes that each affiant, although not on the list of those receiving Ms. Figeley's report,

presented sufficient evidence to satisfy the minimal standard required and to raise a genuine issue of material fact, regarding Mr. Guidrey's knowledge of Plaintiff's protected activity, for the purpose of defeating Defendant's motion for judgment as a matter of law.  See Bergene v. Salt River Project Agric. Improvement & Power Dist., 272 F.3d 1136, 1141 (9th Cir. 2001); Dey, 28 F.3d at 1458 & 1461; Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920 (11th Cir. 1993) ("Although a defendant's stated non-discriminatory reasons could potentially overcome any inference of discrimination or retaliation, the instant record is not so one-sided and is therefore not deserving of summary judgment.").  Compare Raad, 323 F.3d at 1197; Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 716 (8th Cir. 2000).

### 2. Pretext

"For a plaintiff to survive summary judgment, she must adduce enough admissable evidence to raise genuine doubt as to the legitimacy of a defendant's motive, even if that evidence does not directly contradict or disprove a defendant's articulated reasons for its actions."  Buettner, 216 F.3d at 717.  To defeat an employer's motion for summary judgment, the plaintiff must supply evidence from which a reasonable jury could conclude that the defendant's proffered non-retaliatory reason for the adverse action was pretextual in nature.  Id. Although summary judgment in favor of an employer is appropriate when evidence of the employer's unlawful intent is "totally lacking," it should ordinarily not be granted in cases where the

knew of Plaintiff's involvement in the investigation.

plaintiff has established a prima facie case of retaliation because of the "elusive factual question" of the defendant's motivation. <u>Cf.</u> <u>Yartzoff</u>, 809 F.2d at 1377; <u>Schuler v. Chronicle Broad. Co.</u>, 793 F.2d 1010, 1011-12 (9th Cir. 1986). <u>But see</u> <u>Godwin v. Hunt Wesson, Inc.</u>, 150 F.3d 1217, 1220 (9th Cir. 1998) ("a plaintiff at the pretext stage must produce evidence in addition to that which was sufficient for her prima facie case in order to rebut the defendant's showing.").

The Ninth Circuit Court of Appeals has determined that a plaintiff may meet their burden of production regarding the pretextual nature of a defendant's reason for an adverse employment action and survive summary judgment if they provide specific and substantial evidence of pretext. <u>See</u>, <u>e.g.</u>, <u>Derendinger v. Kiewit Constr. Co.</u>, 272 F. Supp. 2d 850, 858 (D. Alaska 2003), <u>citing</u> <u>Bergene</u>, 272 F.3d at 1142. Indirect evidence "tends to show that the employer's proffered legitimate [] reason 'is unworthy of credence because it is internally inconsistent or otherwise not believable.'" <u>Id.</u>, <u>quoting</u> <u>Chuang</u>, 225 F.3d at 1127. A plaintiff may create a disputed issue of fact regarding the pretextual nature of an employer's proffered non-discriminatory reason for an adverse action by specifically refuting facts that allegedly support the employer's assertion that the employee's performance was deficient. <u>See</u> <u>Dey</u>, 28 F.3d at 1460-61. <u>Cf.</u> <u>Calmat Co. v. United States Dep't of Labor</u>, 364 F.3d 1117, 1122-23 (9th Cir. 2004) (upholding finding of illegal motivation given an unusually severe reaction to a complaint, including suspension without pay, where other complaints had been treated less

-22-

1    severely).

2    Plaintiff has presented specific and substantial
3    evidence that Defendant's motive for disciplining or demoting
4    Plaintiff for failing to accurately forecast figures for two
5    months was a pretext for retaliating against her for instigating
6    a sexual harassment investigation. Plaintiff has presented
7    evidence that at least two other company branch managers who had
8    missed their monthly income forecasts were not disciplined for
9    this failure, as was Plaintiff. Plaintiff has stated that,
10   although Defendant allegedly sought to demote Plaintiff for an
11   inability to accurately forecast income figures, the assignment
12   to which Mr. Guidrey suggested she be demoted required she
13   forecast income figures. Plaintiff presents undisputed evidence
14   that Defendant had a system of stepped discipline by which
15   employees were to be corrected for deficient performance, which
16   system was not employed to address Plaintiff's alleged
17   deficiencies in forecasting. Prior to March of 2003, Plaintiff
18   was viewed by the company as a valuable and accomplished
19   employee. Additionally, Plaintiff also presents evidence that
20   Mr. Graham and Mr. Guidrey were different in their treatment of
21   Plaintiff after Mr. Smith was terminated.

22   Plaintiff has presented evidence that raises a genuine
23   issue of material fact with regard to the pretextual nature of
24   Defendant's proffered reason for taking an adverse employment
25   action against Plaintiff. See Strother v. Southern Cal.
26   Permanente Med. Group, 79 F.3d 859, 870-71 (9th Cir. 1996);
27   Hairston, 9 F.3d at 920. Although Defendant's proffered reason
28   is plausible, taking the facts in the light most favorable to

Plaintiff, Defendant's proffered reason for disciplining Plaintiff for failing to meet her sales forecasts for July and August of 2003 is also internally inconsistent. Plaintiff has at least created a genuine issue of material fact with regard to whether Defendant's reason for disciplining her for failure to meet her sales forecasts was a pretext for retaliating against her for instigating a sexual harassment investigation.

**VII. Conclusion**

Viewing all of the evidence in the light most favorable to Plaintiff and resolving all reasonable inferences in her favor, the Court concludes that Plaintiff has raised a material issue of fact with regard to her prima facie case of retaliation. Additionally, Plaintiff has created a genuine issue of material fact with regard to whether Defendant's reason for disciplining her for failure to meet her sales forecasts was a pretext for retaliating against her for instigating a sexual harassment investigation. Accordingly, the motion for judgment as a matter of law in favor of Defendant must be denied.

**THEREFORE, IT IS ORDERED that** Defendant's motion for summary judgment, Docket No. 31, is **denied.**

**IT IS FURTHER ORDERED that** Defendant's motion to strike, Docket No. 50, is **denied.**

DATED this 11th day of April, 2006.

_____
Mark E. Aspey
United States Magistrate Judge

-24-